UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN CAROL GILBERT,

           Case No. No.  20-11072

    Plaintiff,

           District Judge Judith E. Levy

v.            Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Susan Carol Gilbert brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment (ECF No. 21) be GRANTED and that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED.

## I.  PROCEDURAL HISTORY

This case has an extensive procedural history.  On March 4, 2006, Plaintiff filed applications for DIB and SSI, alleging an onset of disability on January 28, 2004. (ECF No. 17-11, PageID. 3457-3461).  Following the initial denial of benefits and a hearing before

Administrative Law Judge ("ALJ") Thomas Walters, on February 10, 2009, ALJ Walters found that Plaintiff was not disabled.   (ECF No. 17-2, PageID. 2358-2372).

Plaintiff filed suit in this Court and on March 21, 2011, the case was remanded for further proceedings.  (ECF No. 17-8, PageID.3072-3094).   In a partially favorable decision upon remand of August 14, 2012,  Plaintiff was found to be not disabled between January 28, 2004 and February 12, 2012, but disabled as of February 13, 2012.  (ECF No. 17-15, Pg.ID.1697-1773).  Plaintiff challenged the partially favorable finding in this Court. On August 17, 2016, parties stipulated to a remand for further fact-finding.  (ECF No.17-15, PageID.4120).  Upon remand, the ALJ assigned to the case found that Plaintiff was not disabled until February 13, 2012. (ECF No. 17-14, 3809-3938).

Following an internal remand by the Appeals Council, ALJ Christopher Ambrose held a hearing on June 7, 2018 in Lansing, Michigan. (ECF No. 17-14, PageID.3939).  Plaintiff, represented by attorney Charles Robison, testified, as did Vocational Expert ("VE") Toni McFarland.  (ECF No. 17-14, PageID.3958, 4000).  On August 28, 2018, ALJ Ambrose found that Plaintiff was not disabled between January 28, 2004 and February 12, 2012 but disabled as of February 13, 2012 forward, consistent with the earlier administrative findings. (ECF No.17, PageID.3914-1566).  After the Appeals Council denied review of the ALJ's determination, Plaintiff filed suit in this Court on May 1, 2020.

## II.  BACKGROUND FACTS .

Plaintiff, born September 21, 1964, was 39 at the time of the alleged onset of

disability date of January 28, 2004. (ECF No. 17-6, PageID.2462, 3457-3461). She completed 12th grade and worked previously as a paint room inspector/packer (ECF No. 17-6, PageID.2475, 2482). Her application for benefits alleges disability as a result of a back injury, vertigo, and ulnar nerve damage (ECF No. 17-6, PageID.2474).

### A. Plaintiff's Testimony[1]

Plaintiff offered the following testimony.

She stopped working in January, 2004 due to her inability to perform the lifting requirements of the former work which regularly required her to lift more than 20 pounds and stand most of the work shift (PageID.3959-3960). The lifting and standing problems had become increasingly worse before she stopped working (PageID.3961). She received a Workers' Compensation settlement in 2007 for back problems and Carpal Tunnel Syndrome ("CTS") (PageID.3962). During the relevant period, she underwent left-sided carpal tunnel release. (PageID.3963). She was right-hand dominant (3964). Her inability to work was due to Irritable Bowel Syndrome ("IBS"), fibromyalgia, vertigo, and back and hand pain. (PageID.3965). Plaintiff opined that for the period under consideration, she would have been unable to perform sedentary work due to both IBS, which required her to spend up to three hours at a time in the bathroom, and vertigo. (PageID.3966). During her working career, coworkers covered for her while she took bathroom breaks or needed to be off her feet.

---

[1] References to the administrative transcript, ECF No. 17, are henceforth referred to by PageID only.

(PageID.3967, 3986-3987).  Before stopping work in January, 2004 she experienced three to four "bad" days each week, during which time she spent most of the day in a recliner. (PageID.3968).   Plaintiff experienced IBS for many years prior to ceasing work (PageID.3969).   She saw a GI specialist on one occasion well before she stopped working. (PageID.3969).  She was prescribed medication and told to watch her diet. (PageID.3970). The medication and diet change did not help the condition. (PageID.3970).

In response to questioning by her attorney, Plaintiff reported that the diagnosis of fibromyalgia had been confirmed by a rheumatologist. (PageID.3971).  She had been prescribed Amitriptyline and advised to do daily stretching exercises.  (PageID.3973-3974). She also took medication for anxiety, depression, diabetes, hypertension, and hypothyroidism. (PageID.3975-3976).  She experienced the medication side effects of sleepiness (PageID.3976), and experienced sleep disturbances due to hand, wrist, elbow, and back pain. (PageID.3977-3978).   Her joint pain was worsened by damp weather. (PageID.3978). She was unable to use her hands for more than one hour before experiencing pain. (PageID.3980).  She was unable to walk for more than 15 minutes or sit for up to 20. (PageID.3988).  She was unable to lift more than 10 pounds. (PageID.3989).  She was able to drive and did not apply for a handicap sticker for the relevant period. (PageID.3991).  Her daughter was two when she stopped working. (PageID.3992).  After she quit working, she was able to take care of her daughter. (PageID.3993).  She was able to attend school-related events. (PageID.3993).

**B.  Medical Records**

**1.  Records Related to Plaintiff's Treatment**

An October, 2002 MRI showed "some" desiccation at L5-S1 but otherwise normal results.  (PageID.2541).   July, 2003 testing showed bilateral tenosynovitis.  (PageID.2588).  Plaintiff reported that wrist splint did not improve her condition. (PageID.2589).  An August, 2003 report notes Plaintiff's report of bilateral hand numbness (worse on the left) with a history of surgery of the left ulnar nerve several years earlier. (PageID.2527).   Needle conduction studies showed "moderately severe median neuropathy at the right wrist and mild median neuropathy at the left wrist but no acute compression neuropathy. (PageID.2527).  She was referred for a surgical consultation. (PageID.2584).   November, 2003 post bilateral carpal tunnel release records note Plaintiff's report of no left hand numbness. (PageID.2613-2623).  David P Petersen, M.D. found that Plaintiff was "doing well regarding [CTS]." (PageID.2613).

In February, 2004, Plaintiff reported that her back pain had improved. ((PageID. 2710)  Treating records note a history of IBS but no current complaints.  (PageID.2710).   She exhibited a normal range of back motion.  (PageID.2710).   Notes from a July 2004 physical examination showed a diagnosis of diabetes.  (PageID.2570).   In March 2005, Plaintiff reported increasing depression, noting her mother's recent death.   (PageID.2558). The following month, she reported back pain for the past couple of years with tenderness of the lumbar spine. (PageID.2555).  She denied numbness. (PageID.2555).  The following month

she reported difficulty turning in bed due to pain. (PageID.2682). In December 2005, Timothy D. Hoffmann, M.D. noted Plaintiff's report of vertigo, chronic back pain with radiculopathy in the right leg. (PageID.2550). Dr. Hoffmann noted a normal gait. (PageID.2550). He recommended yoga and/or Pilates. (PageID.2550).

Physical therapy intake records from January 2006 include Plaintiff's report that her health was "good." (PageID.2641). In February 2006, Dr. Shahs noted Plaintiff's report of continued radiating low back pain but observed a normal gait, full motors strength, and a normal range of motion. (PageID.2547). Imaging studies of the right ankle showed a spur but no significant abnormalities of the ankle joint. (PageID.2535). An MRI of the lumbar spine showed a disc herniation at L4-L5 abutting the L5 nerve roots but no other significant abnormalities. (PageID.2534). He recommended an exercise program of swimming or stationary exercise and weight loss. (PageID.2547). The same month, Plaintiff was discharged from physical therapy after failing to show for two sessions. (PageID.2637). Podiatry records from the next month note that Plaintiff's ankle pain was not relieved with taping. (PageID.2532).

In April 2006, neurosurgeon Michael G. Hughes, M.D. noted Plaintiff's report of "relatively constant" diffuse lower back pain. (PageID.2530). A physical examination showing a normal gait was altogether unremarkable. (PageID.2530-2531). He noted that an MRI showed degenerative changes but no nerve root impingement. (PageID.2531). April, 2006 imaging studies of the lumbar spine and hips were unremarkable. (PageID.2528). A

May, 2006 MRI of the right ankle showed a spur but was otherwise unremarkable. (PageID.2715).  In July, 2006, Dr. Shah administered epidural steroid injections. (PageID.2666).  In August, 2006, pain specialist Matthew Kulper, D.O. noted that Plaintiff moved easily from sitting to standing and exhibited only mild lumbosacral pain. (PageID.2663).

In October, 2006, Dr. Shah noted Plaintiff's complaints of back pain, CTS, and ulnar nerve damage. (PageID.2704).  She reported that her lawyer requested an assessment of her restrictions.  (PageID.2704).  Plaintiff exhibited a full range of motion and full strength in all extremities but positive Phalen's test[2] in the bilateral wrists.  (PageID.2704).

In an undated assessment, Dr. Shah noted a normal gait. (PageID.2691).  He found that Plaintiff could perform low stress jobs but that pain would interfere with her work frequently. (PageID.2693).  He found that she was incapable of standing or walking for even two hours in an eight-hour workday and needed to walk five minutes of every hour. (PageID.2694).  He opined that Plaintiff would require unscheduled breaks and would miss work three to four days every month.  (PageID.2694-2695).  He limited her to occasional postural activity.  (PageID.2695).  He found no manipulative limitations.  (PageID.2695). In December, 2006, Bryan D. Visser, M.D. found that Plaintiff could return to work with restrictions precluding frequent neck rotation, prolonged neck flexion, and lifting abouve 20

---

[2]A positive Phalen's test, "which involves flexing the wrist for 60 seconds, leads to pain or paraesthesia in the median nerve distribution." https://www.gponline.com/ basics-carpal-tunnel-syndrome/neurology/article/1010905.  (Last visited April 19, 2021).

pounds.  (PageID.2696).  He found no manipulative restrictions.  (PageID.2696).

In February, 2007, Plaintiff sought emergency treatment for hives. (PageID.2728). A physical examination was otherwise unremarkable.  (PageID.2728).  In May, 2007, she reported that she was "doing well," but concerned about symptoms of vertigo. (PageID.2833).  In October, 2007, she exhibited a normal gait and station but reported back pain after bike riding two weeks earlier. (PageID.2818).

A February, 2008 examination was unremarkable.  (PageID.2811).  Plaintiff reported that lower back pain had worsened but had "good tolerance to medication taken on an "as needed" basis.  (PageID.2813).   A March, 2008 MRI of the lumbar spine showed degenerative joint disease at L4-L5 and L5-S1 but "no findings that would explain bilateral leg numbness." (PageID.2725, 2804).  In June, 2008, Plaintiff reported back tenderness.  She was prescribed Darvocet and advised to stretch.  (PageID.2796-2797).   She reported that symptoms of IBS were worsening. (PageID.2801)    August, 2008 imaging studies of the cervical spine were unremarkable.  (PageID.2790). Rheumatological records by Sonia Yousuf, M.D. from the same month note the conditions of depression, hypothyroidism, fibromyalgia, and IBS. (PageID.2844, 2847). Plaintiff denied weakness of the arms but reported lower back, neck, and shoulder stiffness. (PageID.2857). She exhibited full strength and a normal range of motion but 12 out of 18 tender points, consistent with a diagnosis of fibromyalgia.  (PageID.2849) The following month, Dr. Yousuf declined to assess Plaintiff's work-related activities, noting the need for "a formal work evaluation" (PageID.2855).

November, 2008, psychological intake notes state that Plaintiff's symptoms of depression were mild. (PageID.3874).  She complained of body pain, IBS, and sleep disturbances. (PageID.3875).  She reported that she was able to manage money and interact with others without problems. (PageID.3876).  Plaintiff appeared fully oriented with normal memory, thought content, and behavior. ((PageID.3881).

In February, 2009, Plaintiff reported "normal activity and energy level," and denied fatigue or illness.  (PageID.3611).  In March, 2009, Dr. Yousuf noted that Plaintiff reported no improvement in symptoms with Lyrica but had not taken vitamin D or exercised as instructed.  ((PageID.3554-3555).  In July, 2009, Plaintiff reported that Lyrica improved her symptoms and that she was taking vitamin D as directed. (PageID.3549).   Physical examination records from the same month note a normal gait, station, and posture. ((PageID.3593).

July, 2010 examination records note Plaintiff's report of normal activity and energy with no fatigue or illness.  (PageID.3579).  February, 2011 examination records note that Plaintiff now experienced the diabetes symptom of frequent urination, but did not experience foot ulcerations or changes in vision. (PageID.3566).  The following month, she reported normal activity and energy level and denied fatigue or illness. (PageID.3564).  She reported "chronic" lower back pain. (PageID.3563).  The following month, she reported no change in activity and energy levels. (PageID.3562).  In July, 2011 she reported worsening back pain and paresthesia of the left leg but exhibited a normal gait, station, and posture with full

strength in the lower extremities. (PageID.3556-3557).

In July, 2011, Dr. Hoffmann completed an assessment of Plaintiff's work-related abilities, finding that since 2003, pain would interfere with her concentration 50 percent of the time with a "moderate" limitation in the ability to handle work-related stress. (PageID.3631).  He found that she was unable to sit or stand/walk for even two hours in an eight-hour work and was incapable of walking one block.  (PageID.3631).  He found that she would miss work about three days every month. ((PageID.3633).  On February 13, 2012, Dr. Hoffmann completed another work-related assessment, finding that since 2003 to 2004, Plaintiff could sit, stand, or walk for about four hours in an eight-hour workday; had a marked inability to handle stress and was incapable of grasping, turning, twisting, or performing fine manipulations more than 10 percent of the workday. (PageID.3723).  He found that Plaintiff would be expected to miss work more than three times a month. (PageID.3724).  The same day, Plaintiff completed a fibromyalgia questionnaire, stating that she was able to shop, prepare meals, visit friends/relatives, drive, and climb stairs on an occasional basis. (PageID.3727).  She reported that she never felt "good" and was chronically tired, stiff, depressed and anxious. ((PageID.3727-3728).  Treating records from the same day note that Plaintiff had been caring for her now-deceased sister until shortly before the appointment (PageID.3725).  Dr. Hoffmann noted a normal gait, station, and posture but that Plaintiff reported lumbar pain and exhibited a reduced range of lumbar and left upper extremity motion. (PageID.3725-3726).  He recommended exercise. (PageID.3726).

### 2. Non-Treating Records

In February, 2007, John Sebright, M.D. performed a one-time consultative examination, noting that EMG studies were consistent with right CTS and left ulnar nerve abnormalities, opining that she could be a candidate for left ulnar nerve repair. (PageID.3865-3866, 3871).  He declined to find that the conditions would cause long-term work restrictions. (PageID.3866).

In October, 2011, Carol Lehmann, L.L.P., working under the direction of Neal Davidson, Ph.D. performed a consultative examination, noting Plaintiff's report of bimonthly anxiety attacks for more than 10 years characterized by shortness of breath, nausea, and feeling of confinement. (PageID.1359).   She reported poor sleep. (PageID.1359).  She reported that since being laid off in 2004, she had tried to babysit but was forced to quit due to physical symptoms.   (PageID.3660). She reported that she had one daughter and stepchildren who visited. (PageID.3660).  She reported getting along with others, being involved in church activities, and getting up at 6:30 to prepare her daughter for school. (PageID.3661).  She was able to use the internet, had a Facebook account with many friends, did crafts with her daughter, and watched television. (PageID.3661).  She reported that she needed to be close to a bathroom. (PageID.3661).  Lehmann observed that Plaintiff was fully oriented with an unremarkable gait. (PageID.3662).   Lehmann noted inconsistencies in Plaintiff's report of extensive physical problems and that the treating records did not support Plaintiff's report of disabling back pain with lower extremity symptoms or allegations of

depression.   ((PageID.3664).  Lehmann concluded that pain appeared to interfere with Plaintiff's concentration, memory, and "some basic tasks." ((PageID.3665).  She noted a "lack of energy and motivation," stating that Plaintiff "does not seem up to working a routine eight-hour day." (PageID.3665). She found moderate limitation in the ability to understand, remember, and carry out complex instruction and respond appropriately to work-related change with marked limitation in the ability to make work-related decisions. (PageID.3667-3668).

On February 13, 2012, Michael Geoghegan, D.O. performed a physical consultative examination, noting that Plaintiff's condition would be improved with physical therapy. (PageID.3712).  He found that Plaintiff could lift/carry up to 10 pounds occasionally; sit for 15 minutes at a time and stand/walk for 20, but was unable to sit, stand, or walk respectively for more than two hours a day. ((PageID.3714).  He found that she was limited to occasional manipulative activity on the right with occasional reaching and push/pulling but no handling, fingering, or feeling on the left. (PageID.3715). He precluded all postural activity. (PageID.3716).   He precluded  all work around unprotected heights and limited her to occasional moving mechanical parts and work with vibrations. (PageID.3717).  He declined to determine whether the limitations would last up to 12 months. (PageID.3718).

In November, 2016, Scott Lazzara, M.D. completed a non-examining assessment of Plaintiff's work-related activities, finding that she could lift/carry up to 20 pounds on an occasional basis; stand/sit for up to four hours a day; and walk for two (PageID.4391-4392).

-12-

He limited her to occasional manipulative and postural activity with a preclusion on kneeling and crawling.  ((PageID.4393-4394).  He limited her to occasional operation of a motor vehicle, humidity/wetness, airborne pollutants, extreme heat and with a preclusion on unprotected heights, moving mechanical parts, extreme coldness, and vibration. (PageID.4395).

On June 23, 2018, Lee A. Fischer, M.D. found that the records from January, 2004 to February 12, 2012 supported the finding that Plaintiff was able to perform substantial gainful activity at the light exertional level. ((PageID.4640-4642).  He found that Plaintiff could sit, stand, or walk for up to two hours without interruption and could sit, stand or walk for up to four hours in an eight-hour workday. (PageID.4643).  He found that Plaintiff could perform manipulative activity frequently except for occasional handling on the left. (PageID.4644).  He limited her to occasional postural activity with a preclusion on the use of ladders, ropes, and scaffolds. ((PageID.4645).  He limited her to occasional operation of a motor vehicle, humidity/wetness, and vibration with a preclusion on unprotected heights, moving mechanical parts, and temperature extremes.  (PageID.4646).  He found that she was capable of shopping, using public transportation, preparing simple meals, and self-care (PageID.4647).

### C.  Vocational Testimony

The VE classified Plaintiff's past work as a paint spray inspector as exertionally light

(medium as performed) and unskilled.[3] (PageID.3997).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history, limited to sedentary work:

> [S]imple routine and repetitive tasks. . . . [O]nly frequently bilateral handling and fingering of objects . . . . [N]o ladders, ropes, or scaffolds, occasional ramps or stairs, occasional balance, stoop kneel, crouch . . . . [N]o crawling . . . . [A]void all exposure to unprotected heights and concentrated use of moving machinery." (PageID.4000-4001).

The VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the exertionally sedentary, unskilled work of a telephone quotation clerk (56,000 positions in the national economy); document preparer (61,000); and final assembler (21,000). (PageID.4001).  She stated that if the individual were further limited to occasional handling and fingering, she could perform the unskilled, sedentary work of a call-out operator (13,000) and surveillance systems monitor (5,000).  (PageID.4002).  She stated that the need to be off task more than one day a month or be off task more than 15 percent of the workday would preclude all gainful employment.  (PageID.4004).   She stated that a five-minute bathroom break

---

[3]

    20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

each hour would not preclude non-production line work.  (PageID.4004-4005).  She stated that most sedentary jobs could be performed in sitting or standing positions. (PageID.4006-4007).

### D.   The ALJ's Determination

Citing the medical evidence, ALJ Ambrose found that for the period between January 28, 2004 and the date last insured for DIB of December 31, 2009, Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine, history of bilateral carpal tunnel releases, status-post ulnar nerve transposition, high blood pressure, history of vertigo, fibromyalgia, obesity, and depression but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (PageID.3916-3917).  He found no limitation in understanding, remembering, or applying information; mild limitation in  interacting with others and adaptation; and moderate limitation in concentration, persistence, or pace (Pg.ID. PageID.3918).

The ALJ determined that prior to February 13, 2012, Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following non-exertional restrictions:

> [S]he was unable to climb ladders, ropes, or scaffold, but could occasionally climb ramps and stairs. She could occasionally balance, stoop, kneel, crouch, and crawl. The claimant was able to perform frequent bilateral handling and fingering of objects bilaterally. She had to avoid all exposure to unprotected heights and concentrated use of moving machinery. The claimant was able to perform simple, routine, and

-15-

repetitive tasks. (Pg.ID.3918).

.

Citing the VE's testimony (Pg.ID.4001), the ALJ determined that Plaintiff could work as a telephone quotation clerk, document preparer (general office clerk), and final assembler (Pg.ID.3925).

The ALJ discounted Plaintiff allegations of disability prior to the December 31, 2009 expirations of entitlement to DIB, noting that as of 2004, Plaintiff was caring for a two-year-old, driving, handling her own money, shopping, and preparing simple meals. (PageID.3918). He discounted Dr. Shah's "unsigned, undated opinion" and Dr. Hoffmann's opinion that Plaintiff was incapable of sedentary work as of 2003, noting that Plaintiff was able to perform exertionally medium work until January, 2004. (PageID.3921). He notes that the more recent evaluations for the relevant period were "the first mentions in the record of work preclusive limitations." (PageID.3921).

## III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis omitted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1520.  The plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS[4]

### A.  The RFC

Plaintiff contends that substantial evidence does not support the finding that she

---

[4]

Title II of the Social Security Act "'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need'" while "Title XVI provides supplemental security income benefits 'to financially needy individuals who are aged, blind, or disabled regardless of their insured status.'"  *Smith v Berryhill*, 204 L Ed 2d 62; 139 S Ct 1765, 1772 (2019)(*quoting Bowen v. Galbreath*, 485 U.S. 74, 75, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988)).  Because "regulations that govern the two programs are . . . equivalent," the Court will refer  only to the regulations governing Title II claims, located at 20 C.F.R.  Pt. 404 .  *Id.* (*citing Sims v. Apfel*, 530 U.S. 103, 107, n. 2, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

was capable of sedentary work for the period from January 28, 2004 to February 12, 2012 ("relevant period"). (ECF No. 18, PageID.4664). Specifically, she argues that the RFC crafted by the ALJ did not account for her need to miss work on a regular basis. (PageID.4665). She also contends that the ALJ erred by relying "too much" on the objective evidence to support the conclusion that the condition of fibromyalgia was not disabling. (PageID.4667).

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 404.1545). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. § 404.1545(b-d); SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996). An ALJ is permitted to draw from the record as a whole in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record")(emphasis added); SSR 96-8p at *2.

The ALJ found that for the relevant period, Plaintiff was capable of a limited range of sedentary work. (ECF No. 17, PageID.3918). He cited Dr.

Sebright's February, 2007 report that the hand and wrist conditions would not cause long-term work restrictions. (PageID.3919)   He noted a consistently normal gait, full muscle strength, and a good range of motion. (PageID.3919-3921). He cited Dr. Visser's December, 2006 opinion that Plaintiff could return to work limited to lifting/carrying 20 pounds with postural limitations. (PageID.3921). The ALJ rejected Dr. Hoffmann's 2011 and 2012 opinions that Plaintiff had work-preclusive limitations as far back as 2003 (PageID.3921). He acknowledged but discounted Plaintiff's allegations of "good" and "bad" days and that she was unable to work more than an hour at a time. (PageID.3919).

The ALJ's rationale for the sedentary RFC is well supported and explained. Aside from the unremarkable clinical observations, the ALJ noted that the imaging studies showed only mild abnormalities. (PageID.3920). He cited Plaintiff's May, 2007 report that she was doing well. (PageID.3920). He noted that exclusively conservative treatment was recommended. (PageID.3920). He acknowledged Plaintiff's report that she lost her exertionally medium job in January, 2004 because she missed too much time but that "[n]othing in the record establishes she could not have performed sedentary work prior to February, 2012." (PageID.3921).

A plethora of evidence supports the finding that Plaintiff could perform sedentary work for the relevant period. The treating records repeatedly show

a normal gait, posture, range of motion, and muscle strength.  (PageID.2530-2531, 2547, 2550, 2704, 2710).  Although Plaintiff reported that IBS interfered with her work activity prior to retiring, she denied current symptoms one month after the alleged onset of disability.  (PageID.2710).  In January, 2006, she characterized her health as "good." (PageID.2641).  In May, 2007, she described her condition as "good" despite symptoms of vertigo. (PageID.2833).  October, 2007 records note her report of back pain after riding a bike. (PageID.2818).  Comments from an MRI report note "no findings that would explain bilateral leg numbness." (PageID.2725). While she was advised to exercise, she did not follow through with treating recommendations (PageID.2547, 3554-3555, 3726).  While Plaintiff's cites treating opinions that she would be absent from work at least three days a month, neither the treating records nor objective studies support this claim.

Plaintiff's related argument that the ALJ "relied too much" on the objective evidence in analyzing the condition of fibromyalgia likewise does not provide grounds for remand.   Under SSR 12-2p, 2012 WL 3104869 (July 25, 2012), a threshold finding that a claimant has the medically determinable impairment ("MDI") of fibromyalgia requires a diagnosis by an "acceptable medical source. *Id.*" at *2.  After finding that fibromyalgia is a medically determinable impairment, SSR 12-2p directs that the ALJ must also analyze the

-21-

record pursuant to SSR 96-7p to determine whether the condition creates some degree of work-related limitation.[5] 1996 WL 362209 at *5 (July 2, 1996).  SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id*. at *6.  In discounting the allegations of limitation, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers v Comm'r of Soc Sec*, 486 F.3d 234, 248 (6th Cir. 2007).  "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id.*

The ALJ's finding that fibromyalgia did not cause disability level limitation  is well supported and adequately explained.  (ECF No 17-14, PageID.3920).  The ALJ not only acknowledged Dr. Yousuf's diagnosis, but found that the condition caused some degree of work-related impairment. *Id.*;

---

[5]Since SSR 12-2p was enacted, the Commission has rescinded SSR 96-7p, eliminating the term "credibility" from Administration policy. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  However, the analysis set forth under SSR 96-7p is otherwise unchanged.

(PageID.3917).  However, in support of his finding that the condition did not prevent sedentary work he noted that Plaintiff consistently exhibited full strength in all extremities and reported a reduction in symptoms from Lyrica. (PageID.3920).  Plaintiff's argument that her subjective claims of limitation were not adequately considered is undermined by the ALJ's observation that during the relevant period, she was able to shop, care for her two-year-old daughter, drive, use a computer, and care for four pets. (PageID.3918).  I am mindful that in *Rogers, supra,* the Court found that the claimant's ability to "drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news" did not equate with the ability to perform "typical work activities." 486 F.3d at 248.  However, in *Rogers*, the claimant reported that she required help in daily activities and personal care from her children whereas here, Plaintiff did not dispute that she was taking care of her daughter, age two, at the alleged onset of disability date. *See Stewart v Comm'r of Soc. Sec.*, No. 1:09CV2761, 2010 WL 6297452, at *5 (N.D. Ohio November 4, 2010), report and recommendation adopted No. 1:09 CV 2761, 2011 WL 1113404 (N.D. Ohio March 24, 2011)(ability to care "for children who require constant attention" undermined allegations of disabling fibromyalgia); *Mitchell v Colvin*, No. EDCV 13-1831 FFM, 2015 WL 1487022, at *10 (C.D. Cal. March 31, 2015)(*citing Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th

Cir.2005)("Where a claimant is able to spend a substantial part of his day in activities that would translate to a workplace setting, the ALJ is entitled to give less weight to his allegations of disabling pain").

Further, while the subjective symptoms take on greater significance in a fibromyalgia claim, the ALJ did not err in noting that the objective evidence also stood at odds with the claim of disabling fibromyalgia. *Hayward v Comm'r of Soc Sec*, No. CV 14-14613, 2015 WL 7749173, at *6 (E.D. Mich. September 21, 2015)(Grand, M.J.), report and recommendation adopted No. CV 14-14613, 2015 WL 7733448 (E.D. Mich. November 30, 2015)("[I]t was not at all improper for the ALJ to consider Hayward's normal gait, muscle strength, and tone in assessing her subjective complaints" of fibromyalgia-related limitations). Likewise here, the ALJ's observation of a normal gait, full range of motion, and full muscle strength, along with the regular activities, supports his finding that fibromyalgia did not cause greater limitations than those set forth in the RFC. (PageID.3919-3921). "'[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits.'" *Berry v Comm'r of Soc. Sec.*, No. 16-CV-11414, 2017 WL 3381414, at *2 (E.D. Mich. August 7, 2017)(Michelson, J.)(*quoting Vance v. Comm'r of Soc. Sec.*, 260 Fed.Appx. 801, 806 (6th Cir. 2008). Substantial evidence supports the conclusion that Plaintiff is not "'one of the minority' of fibromyalgia patients who have a case

-24-

so 'severe ... as to be totally disabled from working.'" *Berry,* at *2 (*quoting Torres v. Comm'r of Soc. Sec.*, 490 Fed.Appx. 748, 754 (6th Cir. 2012))(internal citations omitted) ("The ALJ here credited Berry's fibromyalgia diagnosis, and then sought to determine the effects of that diagnosis on Berry's ability to work. What the ALJ did was permissible under governing Sixth Circuit case law"). For the same reasons, Plaintiff's claim that fibromyalgia precluded even sedentary work for the relevant period is undercut by her regular activities, the objective observations, and her report of improvement with medication.

Finally, Plaintiff makes a two-sentence argument that the ALJ did not take into consideration the alleged medication side effect of tiredness in crafting the RFC.  (ECF No. 18, PageID.4668).  Under 20 C.F.R. 404.1529(c)(3)(iv), the ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medication" taken for pain or "other symptoms." Likewise, under SSR 16-3p, the ALJ will "carefully consider" other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. 2017 WL 5180304 at *6 (October 25, 2017).  The transcript indicates that the ALJ considered the allegations of medication side effects.  The ALJ heard Plaintiff's testimony that one or more of her prescribed medications made her "very tired," and one medicine "knocked her out," but that she took that medication sporadically (ECF No. 17-

14, PageID.3976-3977).  In the administrative opinion, the ALJ cited Plaintiff's report that  Flexeril made her feel "dried out."  (PageID.3920).

Further, the requirement to "consider" the alleged side effects cannot be interpreted to state that the ALJ must also discuss them. *See French v. Comm'r of Soc. Sec.*, No. 15-cv- 12687, 2016 WL 3951419, at *13 (E.D. Mich. June 30, 2016)(ALJ's statement that he considered allegations, along with "daily activities, symptoms, pain, and limiting effects" of symptoms effectively rebuts claimant's argument that medication side effects were not considered)(Morris, M.J.), report and recommendation adopted, 2016 WL 3924111 (E.D. Mich. July 21, 2016); *Kornecky v Comm'r of Soc. Sec.*,  167 Fed Appx 496, 508 (February 9, 2006)(*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999))(ALJ need not "'make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'").  Plaintiff's argument that the ALJ  erred by declining to discuss her sister's layperson assessment of Plaintiff's limitations fails for the same reasons (ECF No. 17-6, PageID.2465-2472).

The current transcript does not require more.  The ALJ noted that Plaintiff regularly cared for a toddler, drove, shopped, and handled finances during the relevant period. (ECF No. 17-14, PageID.3918).  Plaintiff's ability to engage in those activities stands at odds with  the claim that medication side effects

prevented unskilled work limited to "simple, routine, and repetitive tasks." Plaintiff reported that she was able to manage money and interact with others without problems and appeared fully oriented with normal memory, thought content, and behavior. (ECF No. 17-13, PageID.3876, 3881). Treating records created in February, 2012 note that Plaintiff had recently been providing care to her terminally ill sister (PageID.3725). As such, the ALJ's statement that he had considered the evidence but that Plaintiff's statements concerning the "intensity, persistence and limiting effects" of her symptoms was "not fully supported" for the relevant period adequately addresses her allegations of disabling tiredness and medication side effects (ECF No. 17-14, PageID.3921).

**B. The Treating Physician Analysis**

Next, Plaintiff faults the ALJ for declining to adopt the respective "disability" opinions by Drs. Shah and Hoffmann. (ECF No. 18, PageID.4668).[6]

For claims filed before March 27, 2017, the opinion of a treating physician is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *See Wilson v. Comm'r of Soc. Sec.*, 378

---

[6]

In regard to the treating opinions, Plaintiff argues that the ALJ erred by declining to accord them controlling weight but does not contend that the ALJ failed to comply with articulation requirements for a treating opinion set forth in 20 C.F.R. § 1527. As such, the Court's discussion is limited to whether the partial rejection of the treating opinions is supported by other medical opinions and the transcript as a whole.

F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (1996).  In the presence of contradicting substantial evidence however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; § 404.1527(c).

The treating opinions at issue, discussed above, are restated here:  In an undated assessment, Dr. Shah noted a normal gait and the ability to perform low stress jobs but that pain would interfere with her work frequently. (PageID.2691, 2693).  He found that she was incapable of standing or walking for even two hours in an eight-hour workday and needed to walk five minutes of every hour. (PageID.2694).   He opined that Plaintiff would require unscheduled breaks and would miss work three to four days every month. (PageID.2694-2695).  He limited her to occasional postural activity. (PageID.2695).  He found no manipulative limitations.  (PageID.2695).

In July, 2011, Dr. Hoffmann completed an assessment of Plaintiff's work-related abilities, finding that since 2003, pain would interfere would her concentration 50 percent of the time with a "moderate" limitation in the ability to handle work-related stress. (PageID.3631, 3633).   The manipulative limitations were limited to a 50 percent limitation in left-sided grasping,

-28-

turning, twisting, and fine manipulations. (PageID.1273).  He found that she was unable to sit, stand, or walk for even two hours in an eight-hour work and was incapable walking one block.  (PageID.3631).  He found that she would miss work about three days every month. ((PageID.3633).  On February 13, 2012, Dr. Hoffmann completed another work-related assessment, finding that since 2003 to 2004, Plaintiff could sit, stand, or walk for about four hours in an eight-hour workday; had a marked inability to handle stress; and was limited to left-sided grasping, turning, twisting, or performing fine manipulations for only 10 percent of the workday and the same manipulative activities for 80 percent of the time on the right. (PageID.3723).  He found that Plaintiff would be expected to miss work more than three times a month. (PageID.3724).

The ALJ accorded "little weight" to the opinions of Drs. Shah and Hoffmann.  (ECF No. 17-14, PageID.3921).  He noted that the assessment attributed to Dr. Shah was unsigned and undated.  *Id.*  He observed that Dr. Hoffmann's July, 2011 and February, 2012 opinions varied as to Plaintiff's degree of limitation.  *Id.*  The ALJ noted that in February, 2012, Dr. Hoffmann found that the limitations were present as early as 2003, pointing out that Plaintiff was performing exertionally medium work until the end of January, 2004 and that "[n]othing in the record establishes she could not have performed sedentary work prior to February, 2012."  *Id.*  He noted that in 2004, Plaintiff

"was raising a two year old . . . ." *Id.*   He partially adopted treating physician Dr. Visser's December, 2006 finding that Plaintiff could return to work limited to lifting  20 pounds, but rejected the finding that she experienced neck restrictions or required a sit/stand option. *Id.*  He noting the absence of support for neck or gait problems.  *Id.*

Substantial evidence supports the ALJ's conclusions. Dr. Hoffman authored his opinions over seven years after the alleged onset of disability.  The date of Dr. Shah's opinion is unknown.  Dr. Hoffman's two opinions  are contradictory, one finding manipulative activities limited to 50 percent on the left and 100 percent on the right and the other, 10 percent on the left and 80 percent on the right  (PageID.1273, 3724).  Both assessments are grossly inconsistent with Dr. Visser's December, 2006 opinion (based on his current observations) and Dr. Shah's opinion that Plaintiff  experienced *no*  degree of manipulative limitation.  (PageID.2695-2696).

More significantly, the ALJ correctly found that the contemporaneous treating records did not support the opinions. (ECF No. 17-14, PageID.3921). In January, 2006, Plaintiff reported that her health was "good." (ECF No. 17-7, PageID.2641).  The following month, Dr. Shah noted a normal gait, full motor strength, and a normal range of motion. (PageID.2547).  In May, 2007, she reported that she was "doing well." (PageID.2833). February, 2008 records

-30-

show an unremarkable physical examination and "good tolerance" to medication for back pain taken on an "as needed" basis. (PageID.2813).  August, 2008 records note full muscle strength and a normal range of motion despite the fibromyalgia diagnosis.  (PageID.2849).  In February, 2009, July, 2010, and March, 2011 Plaintiff reported normal activity and energy and denied fatigue. (PageID.3564, 3579, 3611, 3679).   None of the records supports the conclusions by Drs. Shah and Hoffmann that Plaintiff would be required to miss multiple days of work each month.  Because the ALJ's rejection of the findings by Drs. Shah and Hoffmann is supported by other treating opinions, the treating records for the relevant period, and Plaintiff's own reports, a remand on this basis is not warranted.

### C.  Listing 1.04

Plaintiff also argues that the evidence supports the conclusion that she meets or medically equals Listing 1.04 (Disorders of the spine) and thus ought to have been found disabled at Step Three of the sequential analysis.  (ECF No. 18, PageID.4670).

"At the third step of the administrative analysis, a claimant meeting or medically equaling the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r. of Soc. Sec.*, 424 Fed. Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011);

-31-

20 C.F.R. §§ 404.1520(a)(4). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (*quoting* 20 C.F.R. § 404.1525(a)). To establish disability at Step Three of the sequential analysis, the claimant must satisfy all of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same). The claimant bears the burden of establishing that he meets or medically equals a listed impairment. *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).

To meet Listing 1.04, the claimant must make a threshold showing of a spinal disorder involving "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[ ], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. To meet the "A" criteria for the Listing, a claimant must also show:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff's claim that she meets Listing 1.04A fails for multiple reasons. Most obviously, the record contains no indication that she experienced motor loss, muscle weakness, or sensory or reflex loss. She cannot show nerve root compression. While one study shows a herniation "abutting" a nerve root (ECF No. 17-7, PageID.2534), "abutting" is not the same as "compression." *See Adams v. Comm'r of Soc. Sec.*, No. 13-cv-11132, 2014 WL 897381, at *9, fn 5 (E.D. Mich. Mar. 6, 2014)(evidence that disc protrusion "abuts" a nerve root does not satisfy the Listing's requirement of "nerve root compression")(emphasis omitted).

For overlapping reasons, Plaintiff's argument that she medically equals Listing 1.04A also fails. In opposition to Plaintiff's argument that her condition equals the Listing, Defendant cites SSR 17-2p, which states that an ALJ may find that a claimant does not medically equal a listed impairment without the support of a medical opinion. (ECF No. 21, PageID.4707)(*citing* SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017)).  Indeed, Plaintiff cannot point to any opinion stating that she medically equals Listing 1.04A.  However, because Plaintiff filed her claim for benefits on March 4, 2006, SSR 96-6p, not SSR 17-2p is applicable. 1996 WL 374180, at *3 (July 2, 1996); Hearing and Appeals Law and Litigation Manual ("HALLEX") I-5-3-30, 2017 WL 1362776, at *5 (last revised October 2, 2017)(prior rules to be employed for applications filed

-33-

before March 27, 2017). At Step Three, the finding that a claimant does not medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 must generally be supported by a medical opinion. SSR 96-6p at *3("longstanding policy requires . . . the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence ..."). As such, Defendant's contention that Plaintiff's argument fails in the absence of an opinion of medical equivalency misstates the applicable regulation. Defendant does not cite any medical source stating that Plaintiff did not medically equal a listed impairment.

However, Plaintiff's claim that fibromyalgia and obesity, along with the back problems, medically equal Listing 1.04A is without merit.   Under 20 C.F.R. § 404.1526, "an impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." The regulation states in relevant part that a finding of medical equivalence can be made where (b)(1) the claimant has an impairment found among the listed impairments that (A-B) does not meet all of the requirements of the listing or, meets all of the requirements but "one or more of the findings is not as severe as specified in the particular listing" provided that "other findings related to [the] impairment ... are at least of equal medical significance to the required criteria."

-34-

Plaintiff cannot show that fibromyalgia, obesity, or any other condition caused nerve root compression neuro-anatomic distribution of pain, motor loss, muscle weakness, or sensory or reflex loss. As discussed exhaustively above, Plaintiff denied fatigue on multiple occasions and demonstrated a consistently normal gait with full muscle strength. The ALJ discussed the possible effect of obesity on Plaintiff's condition consistent with the requirements of SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)("[C]ombined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."). The ALJ acknowledged that Plaintiff was obese but correctly noted "little medical evidence pertaining specifically to her weight" and "nothing to indicate that . . . obesity aggravates [P]laintiff's documented physical condition" beyond the limitations found in the RFC. (ECF No. 17-14, PageID.3920). Where the claimant cannot make a reasonable showing that he or she medically equals a listed impairment, the failure to obtain an equivalency opinion does not constitute grounds for remand. *See Smith v. Commissioner of Social Security*, 2019 WL 3243768, at *5 (E.D.Mich., June 30, 2019)(*citing Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004)(Davis, M.J.), adopted, 2019 WL 3239252 (E.D. Mich. July 18, 2019). "It is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment." *Retka*

-35-

*v. Commissioner of Social Sec.*, 1995 WL 697215, at *2 (6th Cir. November 22,1995)(*citing Evans v. Secretary of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987)).

Plaintiff is currently receiving benefits for disability for the period from February 13, 2012 forward.  Notwithstanding this case's extensive procedural history and Plaintiff's dogged arguments in favor of disability for the relevant period, not one fact-finder has found that she was disabled between January 28, 2004 and February 12, 2012.  Because the ALJ's determination was generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 21] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 18] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of

objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

<br>

     s/R. Steven Whalen      
     R. STEVEN WHALEN
     UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2021

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing document was sent to parties of record on April 30, 2021, electronically and/or by U.S. mail.

     s/Carolyn M. Ciesla      
     Case Manager to the
     Hon. R. Steven Whalen